IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARCIA BARRINGER          :

                          :

    v.                    :    Civil Action No. DKC 25-1414

                          :

PROGRESSIVE SELECT INSURANCE
COMPANY                   :

## MEMORANDUM OPINION

Presently pending and ready for resolution in this insurance dispute is the motion to dismiss for failure to state a claim or, in the alternative, for summary judgment filed by Progressive Select Insurance Company ("Defendant" or "Progressive Select"). (ECF No. 8).   The issues have been briefed, and the court now rules, no hearing being deemed necessary.   Local Rule 105.6.   For the following reasons, the motion will be denied.

## I.   Background

On November 8, 2022, Marcia Barringer ("Ms. Barringer" or "Plaintiff") was a passenger in a car driven by her husband when an uninsured motorist collided with them in Suitland, Maryland. (ECF No. 2 ¶ 5).   Ms. Barringer alleges that she suffered injuries to her back and right knee "[a]s a direct result of the accident." (*Id.* ¶ 6).   She further alleges that the injury to her knee in the accident caused two subsequent falls.   (*Id.* ¶ 7).   On January 17, 2023, she "fell when her knee buckled" and fractured her left pinky

toe.  (*Id.*).  On May 16, 2024, her knee gave out when she attempted to rise from her seat, "resulting in a fall that injured her left hand."  (*Id.*).  Ms. Barringer alleges that she "promptly sought and received medical treatment for all injuries sustained."  (*Id.* ¶ 8).

Ms. Barringer was insured under an auto insurance contract with Progressive[1] that included personal injury protection ("PIP") coverage.  (*Id.* ¶ 10; ECF No. 8-3, at 1).  The insurance contract provided that Progressive would make no payment to the insured under its PIP coverage unless the insured presents her claim to Progressive within twelve months of the accident causing personal injury.  (ECF No. 8-3, at 1).  Ms. Barringer alleges that Progressive "has refused to pay the medical expenses directly to Plaintiff or assume responsibility for the additional injuries resulting from the falls."  (ECF No. 2 ¶ 9).

On February 27, 2025, Ms. Barringer filed a complaint *pro se* against Progressive Select in the Circuit Court for Prince George's County, Maryland.  (ECF Nos. 1 ¶ 1; 2).  In her complaint, she asserts two counts: Count I is a claim for breach of contract, (ECF No. 2 ¶¶ 10-11), and Count II is a claim for bad faith

---

[1] The parties dispute whether the underwriting company is Progressive Select or Progressive Casualty Insurance Company.  In recognition of this dispute, the court refers to the underwriting company as "Progressive" in this paragraph.

insurance practices, (*Id.* ¶¶ 12-13). She seeks $300,000 in compensatory damages along with damages for pain, suffering, and emotional distress. (*Id.* at 3).

Progressive Select removed the case to this court on May 2, 2025, asserting diversity jurisdiction. (ECF No. 1 ¶ 11). On May 16, Progressive Select moved to dismiss Ms. Barringer's complaint for failure to state a claim or, in the alternative, for summary judgment. (ECF No. 8). The court mailed a Rule 12/56 Notice to Ms. Barringer the same day advising her that she had twenty-eight days to respond to Progressive Select's motion. (ECF No. 9). Accordingly, Ms. Barringer's response was due on June 13. After several months without a response from Ms. Barringer, Progressive Select filed a line on September 17 requesting a ruling on its motion. (ECF No. 11). Ms. Barringer then filed her response in opposition on October 6, nearly four months after her response was due. (ECF No. 12). Progressive Select filed its reply on October 20 and did not object to Ms. Barringer's untimely opposition. (ECF No. 14). Ms. Barringer then filed a sur-reply on October 26.[2] (ECF No. 15).

---

[2] Ordinarily, sur-replies are not permitted absent leave of court. Local Rule 105.2.a. Given Plaintiff's *pro se* status, the court construes Plaintiff's sur-reply as a motion for leave to file sur-reply and grants it.

## II.  Defendant's Motion Is One for Summary Judgment

As a threshold matter, the court must determine how to analyze Defendant's motion.  Defendant moves to dismiss for failure to state a claim or, in the alternative, for summary judgment.  "'A motion styled in this manner implicates the court's discretion under Rule 12(d)' . . . to determine whether to accept evidence outside the pleadings, and thus convert a Rule 12(b)(6) motion to a Rule 56 motion." *Coleman v. Calvert County*, No. 15-cv-920-GJH, 2016 WL 5335477, at *3 (D.Md. Sep. 22, 2016) (quoting *McCray v. Md. Dep't of Transp.*, No. 11-cv-3732-ELH, 2013 WL 210186, at *15 (D.Md. Jan. 16, 2013), *aff'd in part, vacated in part on other grounds by*, 741 F.3d 480 (4th Cir. 2014)) (citing Fed.R.Civ.P. 12(d); *McCray*, 2013 WL 210186, at *16).  Defendant attaches to its motion an affidavit and a portion of the insurance contract in question, (ECF Nos. 8-2; 8-3), which are not appropriate to consider on a motion to dismiss unless they are integral to the complaint, *Faulkenberry v. U.S. Dep't of Def.*, 670 F.Supp.3d 234, 249 (D.Md. 2023) (quoting *Reamer v. State Auto. Mut. Ins. Co.*, 556 F.Supp.3d 544, 549 (D.Md. 2021), *aff'd*, No. 21-2432, 2022 WL 17985700 (4th Cir. Dec. 29, 2022)).  "[F]or an extrinsic document to be integral to a complaint the document must either give rise to a claim or be the basis of an element of a claim." *Defs. of Wildlife v. Boyles*, 608 F.Supp.3d 336, 345 (D.S.C. 2022); *see also*

4

*Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). The portion of the insurance contract attached is plainly integral to the complaint because it is the portion of the contract that Plaintiff alleges Defendant breached. The affidavit, however, which is relevant to Count II, is not integral to the complaint; it did not give rise to Plaintiff's claims. Accordingly, it is proper to consider the affidavit only on summary judgment. Furthermore, Defendant's argument regarding Count I is an affirmative defense, which is generally inappropriate to consider on a motion to dismiss unless it appears on the face of the complaint. *L.N.P. v. Kijazaki*, 64 F.4th 577, 585–86 (4th Cir. 2023) (citing *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464, 466 (4th Cir. 2007) (en banc)). The affirmative defense that Defendant raises does not appear on the face of Plaintiff's complaint. Because of the affidavit Defendant attaches to its motion relevant to Count II and the nature of the argument Defendant raises as to Count I, the court will treat Defendant's motion as one for summary judgment.

Treating Defendant's motion as one for summary judgment is not unfair to Plaintiff. Two requirements must be met before converting a motion to dismiss into one for summary judgment: (1) actual notice to the nonmovant that the conversion may occur, and (2) reasonable opportunity for discovery. *See Gay v. Wall*, 761

5

F.2d 175, 177 (4th Cir. 1985). The first requirement is met when the movant styles his motion to dismiss as one for summary judgment in the alternative. *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260 (4th Cir. 1998). Here, Defendant styled its motion as a "Motion to Dismiss, or in the Alternative, Summary Judgment." (ECF No. 8, at 1).

The second requirement is met when the nonmovant fails to "file an affidavit or declaration pursuant to Rule 56(d) . . . [] explaining why, 'for specified reasons, it cannot present facts essential to justify its opposition,' without needed discovery." *Sager v. Housing Comm'n of Anne Arundel Cnty.*, 855 F.Supp.2d 524, 542–43 & 543 n.26 (D.Md. 2012) (quoting Fed.R.Civ.P. 56(d)) (citing *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002); *see also Harrods*, 302 F.3d at 244 ("[T]he failure to file an affidavit under Rule [56(d)] is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996))). Here, Plaintiff failed to request time for discovery through a Rule 56(d) affidavit, which itself is sufficient to satisfy the second requirement. Absent a Rule 56(d) affidavit or declaration, she also fails to identify "which specific facts are yet to be discovered." *McCray*, 741 F.3d at 484 (citing *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008)). She

argues in her opposition that she did not receive the Rule 12/56
Notice that the court mailed to her on May 16, 2025, apprising her
of the requirements of the summary judgment rule, and thus was
"deprived of fair notice . . . of the requirement to file evidence
in opposition." (ECF No. 12, at 2). Even assuming she did not
receive the Rule 12/56 Notice in May when the court mailed it,
Plaintiff gained access to the docket and evidently viewed the
Rule 12/56 Notice before filing her opposition and subsequent sur-
reply. In other words, Plaintiff still received the Rule 12/56
Notice before filing any response. Therefore, she did not lack
notice of the requirements of Rule 56, and her argument fails to
specify whether she needed discovery to supply evidence in
opposition. In her sur-reply, she further requests that the court
"permit this case to proceed to discovery." (ECF No. 15, at 2).
This request, however, merely reflects Plaintiff's understanding
of the procedural posture of the case, not a basis for barring
consideration of Defendant's motion as one for summary judgment.

Accordingly, both requirements are met to treat Defendant's
motion as one for summary judgment. Additionally, Plaintiff is
not prejudiced by consideration of Defendant's motion as one for
summary judgment because the court denies Defendant's motion on
both counts.

## III. Standard of Review

Summary judgment is appropriate under Fed.R.Civ.P. 56(a) when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. A fact is material if it "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Henry v. Purnell*, 652 F.3d 524, 548 (4th Cir. 2011) (Shedd, J., dissenting)). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When evaluating a motion for summary judgment, the court "view[s] all facts and reasonable inferences in the light most favorable to the nonmoving party." *Ballengee v. CBS Broad., Inc.*, 968 F.3d 344, 349 (4th Cir. 2020) (citing *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010)). The "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

"The moving party bears the 'initial responsibility' of showing that there is no genuine issue of material fact." *Shaw v. Foreman*, 59 F.4th 121, 129 (4th Cir. 2023) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the moving party

satisfies that burden, "the nonmoving party must then go beyond the pleadings and affidavits and show that there are 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex*, 477 U.S. at 324).

Plaintiff in this case is *pro se*. Courts hold *pro se* pleadings to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). The court has an obligation to construe filings of self-represented litigants liberally. *Id*. It is generally inappropriate to grant pre-discovery summary judgment against a *pro se* litigant when she has put the court "on fair notice of potential disputes as to the sufficiency of the summary judgment record." *Shaw*, 59 F.4th at 129 (citing *Pledger v. Lynch*, 5 F.4th 511, 526 (4th Cir. 2021)).

## IV.  Analysis

### A.  Plaintiff's Delayed Response in Opposition

Plaintiff filed her response in opposition to Defendant's motion nearly four months after it was due.  To explain her tardiness, she contends that after Defendant removed the case to this court, she "never received any mailed or electronic notice confirming that the Notice of Removal had been granted, nor any order from the federal court advising that the case had officially been transferred or that Plaintiff had 30 days to file any

9

responsive pleading or amendment." (ECF No. 12, at 1). As a result, she "believ[ed] the matter remained pending in state court." (*Id.*). Only soon before she filed her response in opposition did she "discover[] the federal docket." (*Id.*). It is unclear which documents, if any, she received in the mail and how she came to discover the federal docket. Defendant, however, has not objected to Plaintiff's untimely opposition.

Whether to consider an untimely filing for failure to abide by the court's briefing schedule is a matter within the court's discretion. *See Shields v. Verizon Md., LLC*, No. 23-cv-2932-JMC, 2024 WL 1050996, at *3 (D.Md. Mar. 11, 2024) (citing *Ball-Rice v. Bd. of Educ.*, No. 11-cv-1398-PJM, 2013 WL 2299725, at *5 (D.Md. May 24, 2013); *Parker v. Goldman Sachs Mortg. Co. Ltd. P'ship*, 596 F.Supp.3d 559, 568 n.5 (D.Md. 2022)). Fed.R.Civ.P. 6(b)(1)(B) allows the court to "retroactively extend the deadline by which a party was required to file a motion if that party failed to meet that deadline 'because of excusable neglect.'" *Id.* at *3 (quoting Fed.R.Civ.P. 6(b)(1)(B)). Excusable neglect is an "elastic concept." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993) (quoting 4A Wright & Miller's Federal Practice & Procedure § 1165 (2$^d$ ed. 1987)). In another context patterned after Rule 6(b), the Supreme Court of the United States has explained that "excusable neglect" may include

"inadvertence, mistake, or carelessness, as well as . . . intervening circumstances beyond the party's control." *Id.* at 388.   Relevant factors include "the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* at 395 (citing *In re Pioneer Inv. Servs. Co.*, 943 F.2d 673, 677 (6th Cir. 1991)).

Despite the length of Plaintiff's delay, it still falls within the "elastic" outer bounds of excusable neglect.   Plaintiff was mistaken that the court needed to "grant" removal and order the transfer of the case from state court to federal court.   Removal automatically transfers the case to federal court, at which point the case may be remanded to state court upon a valid objection by the plaintiff or the court's *sua sponte* determination that it lacks jurisdiction. *See* 28 U.S.C. §§ 1446–1447.   If Plaintiff's untimely response was due to this mistake, it is excusable given her *pro se* status.   If she indeed failed to receive notice of Defendant's summary judgment motion, then her untimely response was due to circumstances beyond her control, the heartland of excusable neglect.   The *Pioneer* factors support this conclusion.   First, Defendant's failure to contest Plaintiff's untimely response is strong evidence that consideration of Plaintiff's response would

not prejudice Defendant.  Second, Plaintiff's delay of four months
was certainly long, but other courts have considered similarly
delayed filings by *pro se* litigants.  *See, e.g.*, *Harper v. United
Airlines*, No. 23-cv-22329, 2024 WL 3371404, at *1 n.1 (D.N.J. July
11, 2024) (considering *pro se* plaintiff's opposition filed more
than five months late); *Bowden v. City of Buffalo*, No. 15-cv-6565,
2021 WL 1162879, at *3 & n.1 (W.D.N.Y. Mar. 26, 2021) (considering
*pro se* plaintiff's opposition filed more than three months late).
Third, as previously discussed, the reason for Plaintiff's delay
appears to be either mistake or lack of timely notice.  Finally,
there is no evidence in the record that Plaintiff acted with bad
faith; to the contrary, her consistent participation in the
litigation in recent months demonstrates good faith.

The court will consider Plaintiff's late opposition.

## B.  Proper Entity

Defendant first argues that the case should be dismissed
because the named Defendant, "Progressive Select Insurance
Company," is the incorrect party; the correct party, it contends,
is "Progressive Casualty Insurance Company."  (ECF No. 8, at 3).
Defendant attached to its motion an affidavit from a Progressive
Casualty Insurance Company claims officer, Brandon Murphy, who
states that he is handling the claim related to the November 2022
accident.  (ECF No. 8-2 ¶¶ 1-2).  He asserts that "the correct

12

underwriting company is Progressive Casualty Insurance Company," not Progressive Select Insurance Company. (*Id.* ¶ 3). Plaintiff responds that "[t]he policy, correspondence, and claim documents all identify Progressive Select as the responsible insurer." (ECF No. 12, at 1). Neither party has supplied the full insurance policy that identifies the underwriting company. Without that document, a genuine dispute of material fact remains based on the parties' conflicting assertions about the identity of the underwriting company. Defendant's motion for summary judgment on this ground is denied.

### C.    Count I: Breach of Contract

In Count I, Plaintiff alleges that Defendant "refus[ed] to pay for [her] medical expenses, including those resulting from the falls," in breach of its contractual obligation under the parties' auto insurance contract "to cover medically necessary expenses arising from auto accidents." (ECF No. 2 ¶¶ 10-11). Defendant moves for summary judgment on this count on the basis that it "is time barred under the policy and Maryland law" because Plaintiff did not present a PIP claim to Defendant within twelve months of the November 8, 2022, accident. (ECF No. 8, at 3). Under Maryland law, auto insurers may condition the payment of benefits on filing a claim with the insurer within at least twelve months of the date of the motor vehicle accident. Md. Code Ann., Ins. § 19-

508(a)(2)(i). Defendant did just that here, stating in the PIP coverage endorsement: "No payment shall be made under this endorsement for any claim for Personal Injury Protection benefits that is not originally presented to **us** within 12 months of the date of the **accident**." (ECF No. 8-3, at 1). Defendant contends that Plaintiff did not present a claim to it before filing suit on February 27, 2025, over two years after the accident. (ECF No. 8, at 3). Accordingly, Defendant argues, Plaintiff's breach of contract is barred by the "statute of limitations." (*Id.* at 4). Plaintiff responds that Defendant's "claim representatives delayed providing PIP forms and claim numbers despite multiple requests following the November 8, 2022 accident," which "warrant[s] equitable tolling." (ECF No. 12, at 1–2).[3] Defendant interprets Plaintiff's argument as an "admi[ssion] that she did not file a timely PIP claim." (ECF No. 14 ¶ 1). Somewhat confusingly, Plaintiff then retorts that her claim "arises from the Defendant's partial denial of injury compensation [in an 'insufficient

---

[3] In support of this argument, Plaintiff cites "Bertina v. Maryland Auto Ins. Fund, 492 A.2d 1050 (Md. Ct. Spec. App. 1985)." (ECF No. 12, at 2). No such case with that caption or at that location in the Atlantic Reporter appears to exist. The reporter citation directs to the middle of an unrelated New Jersey case regarding zoning. *In re Application of Madin*, 492 A.2d 1034, 1050 (N.J.Super.Ct.App.Div. 1985).

settlement offer'], not an untimely PIP claim." (ECF No. 15, at 1).[4]

There are several material facts that the parties do not dispute. Neither party disputes the existence of the auto insurance contract governing Defendant's obligation to pay benefits to Plaintiff upon a proper claim, (ECF Nos. 8, at 3-4; 8-3; 12, at 1-2), and that Defendant has not paid benefits to Plaintiff related to the November 8, 2022, accident, (ECF Nos. 2 ¶ 9; 8, at 3; 12, at 1-2). Moreover, neither party appears to dispute that a claim by Plaintiff related to that accident is currently pending under the claim number 22-2889587. (ECF Nos. 2 ¶ 10; 8-2 ¶ 2). Plaintiff does not dispute explicitly that she presented this claim after the twelve-month deadline expired, (ECF No. 12, at 2 (requesting equitable tolling, implying a concession that she did not present a timely claim)), though when precisely she did present the claim is unclear. Defendant's statement that Plaintiff did not make a claim for PIP benefits before February

---

[4] Based on Plaintiff's filings, it appears that settlement negotiations between Plaintiff and Defendant have proceeded parallel to this litigation. (ECF No. 12, at 1 ("Plaintiff has been working with the adjustor trying to resolve this case[.]")). Plaintiff's sur-reply seems to reflect a misguided effort to recast her original breach of contract claim as a challenge to Defendant's settlement offer. (ECF No. 15, at 1 ("This lawsuit properly seeks judicial review of the insufficient settlement offer[.]")). Plaintiff evidently did not accept Defendant's "insufficient" settlement offer, thus the underlying claim remains the same.

27, 2025, (ECF No. 8, at 3), implies that Plaintiff presented the currently pending claim after that date.  It is difficult to reconcile that statement, however, with the fact that Plaintiff already possessed her claim number at the time she filed her first complaint on February 24, 2025.  (ECF No. 1-2 ¶ 10).

The parties do dispute, however, the circumstances surrounding Plaintiff's presentment of a claim to Defendant. Although Defendant labels the twelve-month claim filing deadline a "statute of limitations," this presentment deadline is treated as a condition precedent under Maryland law.  *Gov't Emps. Ins. Co. v. Harvey*, 278 Md. 548, 554 (1976) ("We think [the defendant] GEICO had a contractual right to deny liability based on [the plaintiff's] failure to comply with the condition precedent requiring that proof of claim be made within six months after the accident.") (discussing an earlier version of Md. Code Ann., Ins. § 19-508).  As with a statute of limitations argument, the defendant bears the burden of proof of failure to satisfy a condition precedent.  *See United States ex rel. Tusco, Inc. v. Clark Constr. Grp., LLC*, 235 F.Supp.3d 745, 753 (D.Md. 2016) ("[F]ailure to satisfy a condition precedent is ordinarily considered an affirmative defense." (citing *Howard Robson, Inc. v. Town of Rising Sun*, No. 14-cv-2003-ELH, 2015 WL 424773, at *12 (D.Md. Jan. 30, 2015); *Nat'l Lab. Coll., Inc. v. Hillier Grp.*

*Architecture N.J., Inc.*, No. 09-cv-1954-DKC, 2012 WL 3264959, at
*6 (D.Md. Aug. 9, 2012))). Although Plaintiff's argument regarding
equitable tolling of the statute of limitations is misplaced, her
identification of delays on Defendant's behalf during the claims
process remains a valid counter to Defendant's condition precedent
defense. "When a party to a contract contributes to the non-
occurrence of the condition precedent, a trial court may . . .
waive the condition precedent" by applying the "prevention
doctrine," which "is a generally recognized principle of contract
law that states if one party to a contract 'hinders, prevents or
makes impossible performance by the other party, the latter's
failure to perform will be excused.'" *Patriot Constr., LLC v. VK
Elec. Servs., LLC*, 257 Md.App. 245, 264 n.1 (2023) (quoting
*WSC/2005 LLC v. Trio Ventures Assocs.*, 460 Md. 244, 267 (2018)).

At this early stage, Defendant does not carry its burden
regarding failure of a condition precedent. To begin, Defendant
has not produced any evidence regarding the claims process and
timeline thereof with Plaintiff, despite providing an affidavit
from the claims officer handling the claim stating that the claim
exists. (ECF No. 8-2 ¶¶ 1-2). Even though it may not be disputed
that Plaintiff failed to present a claim within twelve months of
the accident, the parties do dispute whether Defendant hindered
Plaintiff's timely compliance with the claim presentment deadline.

17

Because Plaintiff is a *pro se* litigant, she may survive pre-discovery summary judgment if she puts the court "on fair notice of potential disputes as to the sufficiency of the summary judgment record." *Shaw*, 59 F.4th at 129 (citing *Pledger*, 5 F.4th at 526). Plaintiff's assertion that Defendant's "claim representatives delayed providing PIP forms and claim numbers despite multiple requests following the November 8, 2022 accident," (ECF No. 12, at 1-2), is sufficient to preclude summary judgment at this juncture.

D.    **Count II: Bad Faith Insurance Practices**

In Count II, Plaintiff alleges that Defendant "den[ied] and delay[ed] the payment of covered claims," which she asserts to be bad faith insurance practices in violation of Maryland law. (ECF No. 2 ¶¶ 12-13).  Defendant recognizes this claim as a "first-party bad faith claim" against an insurer as authorized under Md. Code Ann., Cts. & Jud. Proc. § 3-1701.[5]  (ECF No. 8, at 4 & n.2); *see also* Md. Code Ann., Cts. & Jud. Proc. § 3-1701(d)(2) ("This section applies only in a civil action . . . [t]hat alleges that

---

[5] No other cause of action is available.  "Maryland does not recognize a tort action against an insurer for bad faith failure to pay a first party insurance claim," *Johnson v. Fed. Kemper Ins. Co.*, 74 Md.App. 243, 246 (1988), other than the statutory cause of action provided in § 3-1701.  Moreover, although Plaintiff invokes the implied covenant of good faith and fair dealing, (ECF No. 2 ¶ 13), "there is no independent cause of action at law in Maryland for breach of the implied covenant of good faith and fair dealing," *Mount Vernon Props., LLC v. Branch Banking & Tr. Co.*, 170 Md.App. 457, 471 (2006).

the insurer failed to act in good faith[.]"). Section 3-1701 "provides a special cause of action for lack of good faith by a property, casualty, or individual disability insurer in handling claims under insurance policies issued, sold, or delivered in Maryland." *Barry v. Nationwide Mut. Ins. Co.*, 298 F.Supp.3d 826, 829 (D.Md. 2018) (citing Md. Code Ann., Cts. & Jud. Proc. § 3-1701).

Defendant argues that Plaintiff's claim is barred because the statutory cause of action is available only to those who have first exhausted their administrative remedies with the Maryland Insurance Administration ("MIA"), which Defendant contends Plaintiff has not done.[6] (ECF No. 8, at 4-5); *see also* Md. Code Ann., Cts. & Jud. Proc. § 3-1701(c)(1) ("[A] party may not file an action under this subtitle before the date of a final decision [by the MIA] under § 27-1001 of the Insurance Article."). Plaintiff responds that she "did, in fact, file a related complaint with MIA concerning th[e] . . . denial and lack of payment, but it was closed without substantive review due to administrative delays and medical hardship." (ECF No. 12, at 2).[7] Defendant replies that

---

[6] Defendant further argues that Plaintiff meets none of the exceptions to the exhaustion requirement. (ECF No. 8, at 5). Plaintiff does not dispute this point.

[7] In support of her alternative argument that the court "may stay proceedings or permit amendment pending renewed MIA review rather than foreclose the claim altogether," Plaintiff cites

Plaintiff "does not assert when she allegedly filed this Complaint, when she received the alleged denial order, and whether her [MIA] Complaint complied with Md. Code Ann., Ins. § 27-1001." (ECF No. 14 ¶ 2). Consequently, Defendant argues, "Plaintiff has not met her burden that she exhausted the required administrative remedies." (*Id.*). Plaintiff now asserts, however, that "[t]he MIA advised [her] that because the insurer had made a settlement offer—albeit insufficient—the issue did not fall under its jurisdiction for bad faith review." (ECF No. 15, at 1).

A genuine dispute of material fact regarding Plaintiff's administrative exhaustion precludes summary judgment.[8]

---

"Hous. Auth. of Baltimore v. Maryland Ins. Admin., 202 Md. App. 469 (2011)." (ECF No. 12, at 2). No such case with that caption or at that location in the Maryland Reporter appears to exist. The reporter citation directs to the middle of an unrelated Maryland case regarding the rights of witnesses who are arrested pursuant to a body attachment. *Broadway v. State*, 202 Md.App. 464, 469 (2011). In light of the erroneous citations identified here and in footnote three, Plaintiff is reminded of her obligation as an unrepresented party to cite only legitimate cases. Fed.R.Civ.P. 11(b).

[8] Whether administrative exhaustion is a matter of jurisdiction or the merits is a close question. Courts in this district have generally treated the administrative exhaustion requirement of § 3-1701 as jurisdictional. *E.g.*, *Jackson v. Standard Fire Ins. Co.*, No. 17-cv-1612-TDC, 2018 WL 348148, at *3 (D.Md. Jan. 9, 2018). Until recently, the proposition that a state legislature could limit federal court jurisdiction through state administrative exhaustion requirements aligned with Fourth Circuit case law. *See, e.g.*, *Balfour Beatty Infrastructure, Inc. v. Mayor & City Council of Balt.*, 855 F.3d 247, 249 (4th Cir. 2017) (affirming district court's dismissal for lack of subject matter jurisdiction because the plaintiff had failed to exhaust state

Specifically, Defendant provides the affidavit of its claims officer stating that "Plaintiff did not pursue an action with the [MIA]" before filing this lawsuit. (ECF No. 8-2 ¶ 4). Plaintiff contends in response that she did file a complaint with the MIA. (ECF No. 12, at 2). It is worth addressing a couple of inconsistencies in Plaintiff's papers on this question. First, Plaintiff's opposition states that she "file[d] a related complaint with [the] MIA," (*Id.*), but her sur-reply states that she "contacted the MIA regarding this matter," (ECF No. 15, at 1). Whether she means that she contacted the MIA regarding her *complaint* or that contacting the MIA *constitutes* her complaint is unclear. Second, Plaintiff explains in her opposition that her complaint "was closed without substantive review due to administrative delays and medical hardship," (ECF No. 12, at 2), but in her sur-reply she reports that the "MIA declined to act" because it advised her it lacks jurisdiction over matters where the insurer has made a settlement offer, (ECF No. 15, at 1). These

---

administrative remedies). In 2024, however, the Fourth Circuit cast doubt on the correctness of this proposition. *Wideman v. Innovative Fibers, Inc.*, 100 F.4th 490, 497 (4th Cir. 2024) ("Every court draws its power to hear cases and controversies from the laws of the sovereign that created it," so "state law *cannot* oust federal courts of jurisdiction that they already possess pursuant to federal law." (citation modified)). *Wideman*, however, does not address the Fourth Circuit's holding in *Balfour Beatty* and thus leaves open the question whether it applies in the unique context of administrative exhaustion.

varying explanations obscure who terminated Plaintiff's charge with the MIA and why.  Despite these inconsistencies, none of Plaintiff's assertions align with Defendant's account of her failure to exhaust administrative remedies; therefore, she has satisfied her pre-discovery summary judgment burden of showing "potential disputes as to the sufficiency of the summary judgment record."[9] *Shaw*, 59 F.4th at 129 (citing *Pledger*, 5 F.4th at 526).

## V.  Conclusion

For the foregoing reasons, Defendant's motion to dismiss or, in the alternative, for summary judgment will be denied.  A separate order will follow.

/s/
_____
DEBORAH K. CHASANOW
United States District Judge

---

[9] Even absent a final decision from the MIA—which is a prerequisite to suit under § 3-1701(c)(1)—in the record, the dispute over whether Plaintiff filed a complaint with the MIA is material.  For example, if Plaintiff filed a complaint and the MIA did not act on it within ninety days, the MIA's failure to act constitutes a decision that may become final and exhaust Plaintiff's administrative remedies.  *See* Md. Code Ann., Ins. § 27-1001(e)(1)(ii), (f)(3).  Plaintiff at least initially suggests that her complaint was closed due to "administrative delays," (ECF No. 12, at 2), potentially referring to this procedural feature.